UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SACV 22-0816 JGB (KESx)** | Date | November 21, 2024 |
|---|---|---|---|
| Title | ***Gabriela Gonzalez v. The Childrens Place, Inc. et al*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING Defendant's Motion to Dismiss and to Strike (Dkt. No. 48); and (2) VACATING the November 25, 2024 Hearing (IN CHAMBERS)

Before the Court is defendant The Children's Place, Inc.'s motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and to strike pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D). ("Motion," Dkt. No. 48.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **DENIES** the Motion. The Court **VACATES** the November 25, 2024 hearing.

## I. BACKGROUND

On April 14, 2022, Plaintiff Gabriela Gonzalez ("Gonzalez") filed a putative class action complaint against defendant The Children's Place, Inc. ("Defendant" or "TCP") and Does 1-50, inclusive. ("Complaint," Dkt. No. 1.) The case was originally assigned to Judge Cormac J. Carney. ("Notice of Assignment," Dkt. No. 5.) On August 3, 2023, Defendant filed a motion to dismiss the Complaint. ("MTD1," Dkt. No. 29.) On August 15, 2023, Plaintiff Gonzalez and newly joined Plaintiff Christina Calcagno ("Calcagno") (collectively, "Plaintiffs") filed an amended putative class action complaint against Defendant and Does 1-50, inclusive ("FAC," Dkt. No. 34.), mooting Defendant's MTD1. The FAC asserts three causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200; (2) violation of California's False Advertising Law ("FAL"), Bus. & Prof. Code § 17500; and (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750. (See FAC.) In support of the FAC, Plaintiff filed two exhibits: (1) Exhibit A, snapshots of Defendant's website,

the childrensplace.com, ("Defendant's Website" or "TCP Website") acquired through the Wayback Machine ("Ex. A," Dkt. No. 34-1) and (2) Exhibit B, a list of Defendant's childrensplace.com merchandise purportedly on sale for more than 90 days as of February 25, 2022 ("Ex. B," Dkt. No. 34-2).

On September 15, 2023, Defendant filed a motion to dismiss the FAC ("MTD2," Dkt. No. 38.), arguing in part that the related Rael Action[1] barred Gonzalez (and other Rael class members) from bringing the claims alleged in this case pursuant to a release in the Rael settlement agreement. On November 1, 2023, Judge Carney denied without prejudice Defendant's MTD2 and stayed the case ("Stay," Dkt. No. 43.), pending the Rael court's decision on Defendant's motion for preliminary and permanent injunction and to enforce the settlement agreement. See Rael, Dkt. No. 172. On April 3, 2024, the Rael court denied Defendant's motion, finding that the release does not preclude the Rael class members from participating in the instant case. Rael, 2024 WL 1444980, at *5 (S.D. Cal. Apr. 3, 2024) ("The language of the Release does not, on its face, include claims based on future conduct, even if that conduct is a continuation of the same pattern of behavior discussed in the Rael Complaint.") The court determined that the Rael class differs in "one very important respect" from the proposed class in this case—the time period the items were purchased."[2] Id.

On April 12, 2024, Judge Carney lifted the stay. (Dkt. No. 47.) On May 3, 2024, Defendant filed this Motion. (See Motion.) In support of the Motion, Defendant submitted a request for judicial notice of 18 exhibits, each copies of webpages from www.walmart.com (the "Walmart Website") displaying listings of TCP-branded products. ("RJN1" Dkt. No. 48-2.) On May 31, 2024, this case was transferred to this Court. ("Transfer," Dkt. No. 53.) On June 10, 2024, Plaintiffs opposed the Motion. ("Opposition," Dkt. No. 54.) On July 1, 2024, Defendant replied. ("Reply," Dkt. No. 59.) Defendant concurrently filed a second request for judicial notice ("RJN2" Dkt. No. 58) of the following documents: (1) a copy of the Walmart Website for item listing "The Children's Place Boys Uniform Stretch Straight Chino Pants, Sizes 4-18"; (2) a copy of the TCP Website for item listing "The Children's Place Boys Uniform Stretch Straight Chino Pants 2-Pack"; (3) a copy of the Walmart Website for item listing "The Children's Place Boys School Uniform 3-Pack Strech [sic] Chino Shorts, Sizes 4-16"; (4) a copy of the TCP Website for item listing "Boys Uniform Stretch Chino Shorts 3-Pack"; (5) a copy of the Walmart Website for item listing "The Children's Place Boys Stretch Straight Jeans, 2-Pack, Sizes 4-16"; and (6) a copy of the TCP Website for item listing Boys Straight Jeans 2-Pack." (RJN2 at 2-3.)

//

## II.   FACTUAL ALLEGATIONS

---

[1] Rael v. The Children's Place, Inc., Case No. 3:16-cv-00370-GPC-LL (S.D. Cal.) (the "Rael Action").

[2] The Rael class includes those who purchased discounted items from TCP between February 11, 2012 and January 28, 2020, while the proposed class in this case includes those who purchased discounted items from TCP on or after January 29, 2020. See Rael, 2024 WL 1444980, at *5.

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this Motion.  See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

**A.       Defendant's Sales**

Defendant advertises, markets, distributes, and sells children's apparel, accessories, footwear, and other items to consumers through its retail and outlet stores and its website, childrensplace.com.  (FAC ¶ 51.)  Defendant's Website advertises products purportedly on sale by displaying the purported original price with a strikethrough alongside the corresponding sale price, immediately next to a picture of the product.  (Id. ¶¶ 18-19.)  The discount percentage is often shown in red alongside the purported original price, indicating a substantial discount.  (Id. ¶ 18.)  Similarly, Defendant's brick-and-mortar retail and outlet locations advertise discounts on Defendant's products by displaying large sale-discount signage on top of or alongside racks of clothing or accessories, indicating a substantial percentage discount on the items.  (Id. ¶ 20.)  Each item is tagged with a price tag displaying the purported original price.  (Id.)

The products sold on Defendant's Website are never sold at the price displayed with a strikethrough.  (Id. ¶ 19.)  The purported original price is merely a false reference price to manufacture false discounts and incentivize purchases.  (Id.)  Similarly, products purportedly on sale in Defendant's retail and outlet locations are not sold at the reference price for any substantial period of time, if at all.  (Id. ¶ 20.)

Plaintiffs' counsel conducted an online and in-store investigation of Defendant's merchandise pricing.  (Id. ¶ 32.)  Plaintiffs' counsel tracked the pricing of merchandise offered for sale through Defendant's Website at various periods from 2020 through the present.  (Id. ¶ 33; Ex. B.)  For the duration of the tracking periods, each product remained significantly discounted from its reference price.  (Id.)  Plaintiffs' counsel also conducted an investigation of items sold at Defendant's brick-and-mortar stores and found that in-store items are priced identically to the corresponding items online.  (Id.)  Specifically, in-store merchandise is falsely discounted and never actually offered at the advertised reference prices.  (Id.)

Consumers are vulnerable to perceived bargains.  (Id. ¶ 13.)  Reference prices appeal to consumers' desire for bargains or deals.  (Id. ¶ 11.)  Inflated and/or false advertised reference prices misleads consumers into believing the product they are buying has a higher market value and induces them into purchasing the product.  (Id. ¶¶ 2, 12.)  False reference pricing creates a sense of urgency in consumers, who are misled to believe that the product will be re-sold at the higher reference price if they do not purchase soon.  (Id. ¶ 24.)  Defendant is engaged in a purposeful, deceptive false reference price advertising scheme.  (Id.)  Defendant had knowledge of its false reference price advertising scheme because Defendant was previously sued for precisely the same conduct in the Rael Action.  (Id. ¶ 29.)

**B.       Plaintiff Gonzalez's Purchases**

On February 19, 2022, Plaintiff Gonzalez made the following purchases on Defendant's Website:

| No. | Item: | Purported Reference Price: | Sale Price paid by Plaintiff Gonzalez: |
|---|---|---|---|
| 1 | Boys Basic Bootcut Jeans | $12.99 | $9.74 |
| 2 | Boys Uniform Stretch Chino Pants 2 Pack | $31.99 | $24.00 |
| 3 | Boys Uniform Stretch Chino Shorts 3-Pack | $41.97 | $31.48 |
| 4 | Boys Stretch Straight Jeans Black Wash | $15.99 | $11.99 |
|  | Tax: |  | $5.98 |
|  | **Total:** |  | **$83.19** |

(Id. ¶ 37.)

Gonzalez examined each of the above-listed products on Defendant's Website before deciding to purchase the products. (Id. ¶ 38.) Gonzalez observed the original price and accompanying sale price of the items. (Id. ¶ 39.) Gonzalez believed she was receiving a significant discount on the products she had chosen. (Id.) Gonzalez believed the discounted price would likely not last. (Id.) Based on these beliefs, Gonzalez purchased the four items for $83.19. (Id.) However, the products that Gonzalez purchased were not offered for sale at the purported reference price within the 90 days preceding Plaintiff Gonzalez's purchase. (Id. ¶ 40.)

C.   **Plaintiff Calcagno's Purchases**

On January 18, 2022, Plaintiff Calcagno made the following purchases at Defendant's retail store located at 4155 Camino de la Plaza, San Ysidro, CA 92173:

| No. | Item: | Purported Reference Price: | Sale Price paid by Plaintiff Calcagno: |
|---|---|---|---|
| 1 | ANGL SIDE PCD JOG C (SKU: 194936909282) | $19.95 | $11.97 |
| 2 | U FLEECE JOGGER H/T 193511045476 | $16.95 | $11.86 |
| 3 | U FLEECE JOGGER NEW 193511045537 | $16.95 | $11.86 |
|  | Tax: |  | $2.77 |
|  | **Total:** |  | **$38.46** |

(Id. ¶ 41.)

While shopping in Defendant's retail store, Calcagno noticed numerous signs within the store advertising "30%, 40%, and 50% Off" discounts on various items throughout the store. (Id. ¶ 42.) Calcagno observed the original price and accompanying sale price of the items. (Id. ¶ 43.) Calcagno believed she was receiving a significant discount on the products she had chosen. (Id.) Calcagno believed the discounted price would likely not last. (Id.) Based on these beliefs, Calcagno purchased the three items for $38.46. (Id.) The discount was a material representation to Calcagno, and she relied upon it in making her purchase decision. (Id.)

**D.    Plaintiffs' Harm**

Plaintiffs reasonably relied upon Defendant's purported reference prices and purported discounts when purchasing Defendant's apparel and retail products. (Id. ¶ 45.) Plaintiffs would not have made such purchases but for Defendant's representations regarding the substantial discount being offered for the product. (Id.) Plaintiffs would like to continue buying such merchandise from Defendant in the future but cannot be certain of the veracity of Defendant's advertised bargains. (Id.) Plaintiffs were injured because Defendant's false reference price discounting scheme inflated the true market value of items they purchased. (Id. ¶ 47.)

Plaintiffs and the putative class members reasonably acted and relied on the references prices and substantial discounts that Defendant advertised, and they made purchases believing they were receiving products of greater value than actually held. (Id. ¶ 46.) Plaintiffs, like other class members, were lured in, relied on, and were damaged by the deceptive pricing scheme Defendant carried out. (Id.)

### III.    LEGAL STANDARD

**A.    Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")[3], a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

---

[3] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**B.      Rule 9(b)**

Rule 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake. Under Rule 9(b), to state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud," and the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee, 236 F.3d 1014, 1018-19). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). "In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." Siegel v. Lyons, 1996 WL 438793, at *3 (N.D. Cal. Apr. 26, 1996) (internal quotation marks omitted). Rule 9(b) applies to the claims that are based on alleged fraudulent conduct, even if they don't allege fraud specifically. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009)); Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1117, 1122-23 (C.D. Cal. 2010).

**C.      Rule 12(f)**

Federal Rule of Civil Procedure 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Such motions are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." Platte Anchor Bolt, Inc. v. IHI, Inc., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

**D.    Rule 23(d)(1)(D)**

Federal Rule of Civil Procedure 23(d)(1)(D) provides a court may "require that the pleadings be amended to eliminate allegations about representations of absent persons and that the action proceed accordingly." "Pursuant to Rule 23(d)(1)(D), the court may strike class allegations if the complaint plainly reflects that a class action cannot be maintained." Simpson v. Ramada Worldwide, Inc., 2012 WL 5988644, at *2 (N.D. Cal. Nov. 29, 2012). However, "it is in fact rare to . . . [strike class allegations] in advance of a motion for class certification." Cholakyan v. Mercedes-Benz USA, LLC, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (collecting cases). Class members must have suffered an injury to have standing to sue and to constitute an ascertainable class. Lyons v. Bank of Am., NA, No. C 11-1232 CW, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011). A court considers whether the case is in the early stage of the proceedings and views the pleadings in the light most favorable to the non-moving party. Simpson, 2012 WL 5988644, at *2 (citation omitted). A court should only grant a Rule 23(d)(1)(D) motion when the complaint has obvious deficiencies that cannot be remedied through the class discovery and class certification process. Id. (citation omitted).

**E.    Rule 15**

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

**IV.    DISCUSSION**

Defendant moves to dismiss the FAC with prejudice in its entirety for failure to state a claim under Rule 12(b)(6). (See Motion at 1-2.) Defendant also moves to strike portions of the FAC under Rules 12(f) and 23(d)(1)(D). (Id.) Defendant argues the following: (1) Plaintiffs' UCL, FAL, and CLRA claims fail to meet Rule 9(b)'s heightened pleading standard for fraud; (2) Plaintiffs' claim for equitable restitution fails; and (3) Plaintiffs' class allegations and class definitions are overbroad and should be stricken. (See Motion.)

//
//
//
A.     **UCL, FAL, and CLRA Claims**

Defendant argues that Plaintiffs fail to allege fraud with the required particularity under Rule 9(b).  (Motion at 15-16.)  Plaintiffs' claims under the FAL, CLRA, and UCL all require pleading fraudulent conduct with particularity under Rule 9(b).  See Kearns, 567 F.3d at 1125.

California's FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500.  "This statute makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]'"  Arevalo v. Bank of Am. Corp., 850 F. Supp. 2d 1008, 1023-24 (N.D. Cal. 2011) (internal citation omitted).  The FAL further provides that "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement."  Id. § 17501.  "The statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. . . . Consequently, even a perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under this section."  Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1162 (9th Cir. 2012) (internal citations, quotations, and alterations omitted).

California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  Specifically, the CLRA prohibits, among other things, "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The UCL provides a separate theory of liability under the "unlawful," "unfair," or "fraudulent" prongs.  Stanwood v. Mary Kay, Inc., 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (citing Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007)).  "The UCL expressly incorporates the FAL's prohibition on unfair advertising as one form of unfair competition." Hinojos, 718 F.3d at 1103.  Accordingly, any violation of the FAL also violates the UCL.  Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Kasky v. Nike, Inc., 27 Cal. 4th 939, 950 (2002)).

    **1.    Rule 9(b) pleading**

Defendant contends that Plaintiffs have failed to satisfy the Rule 9(b) pleading standards for their fraud claims because Plaintiffs fail to plead sufficient investigatory facts to support their allegations. (Motion at 6.) The Court considers each Plaintiff's claims separately.

### a. Plaintiff Gonzalez's Investigatory Facts

Gonzalez alleges that the four products she purchased from Defendant's Website on February 19, 2022 were "never offered for sale at the original price listed on Defendant's e-commerce Website and certainly not within the 90 days preceding Plaintiff Gonzalez's purchase." (FAC ¶ 40.) Plaintiffs' counsel conducted a pre-complaint investigation of Defendant's Website using a "sophisticated software program" to "track[] the pricing of certain merchandise offered for sale through [Defendant's Website] at various periods from 2020 through the present." (Id. ¶ 33.) Plaintiffs' counsel conducted an additional investigation using the Wayback Machine—an "archive of internet webpages as they existed at a singular point in time" (Id. n. 16.)—and found that the snapshots recorded by the Wayback Machine are "consistent with Plaintiffs' counsel's investigation." (Id. ¶ 34.) Plaintiffs submit an 81-page list of items they identified were not offered for sale at the original price listed on Defendant's Website for over 90 days as of February 25, 2022. (See Ex. B.)

As an example, Plaintiffs point to "Girls Trend Graphic Tee 2-Pack," which was advertised on Defendant's Website on February 21, 2022 with a sale price of $8.38, directly next to a higher price with a strikethrough, "$20.95," and red text indicating "60% off." (FAC ¶ 19; Ex. A at 2.) The Wayback Machine snapshots show that on various dates from September 18, 2020 to February 27, 2021, "Girls Trend Graphic Tee 2-Pack" was advertised at 50% off on Defendant's Website. (Id. 2-6.) Specifically:

| Date | Discount | Original Price | Sale Price |
|---|---|---|---|
| February 27, 2021 | 50% off | $20.95 | $10.48 |
| February 9, 2021 | 50% off | $20.95 | $10.48 |
| January 26, 2021 | 50% off | $20.95 | $10.48 |
| December 17, 2020 | 50% off | $19.95 | $9.98 |
| November 25, 2020 | 50% off | $19.95 | $9.98 |
| November 3, 2020 | 50% off | $19.95 | $9.98 |
| October 20, 2020 | 50% off | $19.95 | $9.98 |
| September 18, 2020 | 50% off | $19.95 | $9.98 |

(Id.)

The Court finds that it is reasonable to infer from Plaintiffs' sample data that "Girls Trend Graphic Tee 2-Pack" was not offered for sale by Defendant at the original price listed on Defendant's Website for over 5 months (162 days). (See id.) The sample data make plausible Plaintiff Gonzalez's claim that the items she purchased were "never offered for sale at the original price listed . . . and certainly not within the 90 days preceding Plaintiff Gonzalez's

purchase." (FAC ¶ 40.) Rule 9(b) does not require that Gonzalez plead enough investigatory facts to "*prove* that [the] items were never offered at the 'original' or 'regular' price during the relevant period;" it is sufficient that the investigation "plausibly suggest that they were not." Azimpour v. Sears, Roebuck & Co., 2017 WL 1496255, at *8 (S.D. Cal. Apr. 26, 2017) (emphasis added). Where "Plaintiffs allege that Defendant['s] entire pricing scheme, not just the prices at the time of her purchase, is deceptive," the investigation need not involve the specific items Gonzalez purchased or occur concurrently with Gonzalez's purchase to plead a sufficient claim. Real v. Y.M.I. Jeanswear, Inc., 2017 WL 11675686, at *5 (C.D. Cal. Sept. 1, 2017) (denying defendant's motion to dismiss). The sample of Plaintiffs' investigative findings, combined with the allegations specific to Plaintiff Gonzalez's experience, raise enough facts to state plausible UCL, FAL, and CLRA claims that sound in fraud. See French v. Banana Republic LLC, 2024 WL 4682312, at *1 (N.D. Cal. Nov. 4, 2024).

   b. **Plaintiff Calcagno's Investigatory Facts**

Unlike Gonzalez, Calcagno made her purchases at Defendant's retail store in San Ysidro, CA, not online. (FAC ¶ 41.) Defendant argues that the FAC "fails to allege necessary facts" regarding Plaintiffs' in-store investigation "including what stores were visited, when they were visited, what geographic areas were covered, what the signage in the stores stated, etc.[] to establish and make plausible that the allegedly deceptive prices were 'never' offered by TCP." (Motion at 3.)

Defendant is correct that, unlike with their online investigation, Plaintiffs do not plead specific facts regarding the extent or the findings of their in-store investigation. (See FAC.) However, the Court finds that the FAC nonetheless satisfies Rule 9(b)'s particularity requirements. The FAC alleges that "[o]n January 18, 2022, Calcagno went to Defendant's San Ysidro store and purchased three items, for which she lists the reference price and discount price of each. (Id. ¶ 41.) Calcagno examined several items then decided to make her purchase because of the significant discount she observed. (Id. ¶¶ 42-43.) The FAC then alleges that the reference prices were fraudulent because they were not true prices that were ever offered, but rather fake prices intended to mislead a consumer into thinking they were getting a large discount. (Id. ¶¶ 44-46.) Regarding the in-store investigation, the FAC alleges that Plaintiffs' counsel "tracked the pricing of items sold at Children's Place brick-and-mortar stores" and found that "items sold at Children's Place brick-and-mortar stores . . . are priced identically to the corresponding items online" and that Defendant's allegedly deceptive pricing scheme is applied "uniformly" both online and in-store. (Id. ¶¶ 33, 35.) Defendant advertises the purported discounts in its retail stores through "large sale-discount signage on top of or alongside each rack of clothing or accessories advertising a . . . '% off.'" (Id. ¶ 32.) These allegations thus clearly list the who, what, when, where, and how of the alleged fraud. See, e.g., French v. Banana Republic LLC, 2024 WL 4682312, at *1 (N.D. Cal. Nov. 4, 2024); Pickles v. Kate Spade & Co., 2016 WL 3999531, at *1 (N.D. Cal. July 26, 2016); Knapp v. Art.com, Inc., 2016 WL 3268995, at *4 (N.D. Cal. June 15, 2016).

The Court is "not required to view a single allegation in isolation" in considering Calcagno's individual purchases on a Rule 12(b)(6) motion. Shimono v. Harbor Freight Tools USA, Inc., 2016 WL 6238483 at *6 (C.D. Cal. Oct. 24, 2016). Taken as true, the allegation that Defendant's in-store items are priced "identically" and "uniformly" to its online items—along with the example of Plaintiffs' counsel's online investigation and the facts specific to Calcagno's experience—together make plausible that Defendant is operating a fraudulent reference pricing scheme in its California retail stores. The FAC alleges "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support Calcagno's FAL, CLRA, and UCL claims. Rubenstein v. Neiman Marcus Grp. LLC, 687 F. App'x 564, 566 (9th Cir. 2017). "The [F]AC already sets forth detailed factual allegations that provide Defendant with adequate notice of the claims asserted against it—Rule 9(b) requires no more. If Defendant wishes to obtain additional information regarding Plaintiffs' investigation, it must do so in discovery, not during the pleading stage." Jacobo v. Ross Stores, Inc., 2016 WL 3483206, at *3 (C.D. Cal. June 17, 2016).

### c. Prevailing Market Price

Defendant argues that Plaintiffs fail to plead sufficient facts to establish that the former prices advertised by Defendant were not the prevailing market prices of similar goods from other retailers. (Motion at 10.) Defendant requests this Court take judicial notice[4] of several copies of Walmart Website item listings of TCP-branded products (See RJN1; RJN2), arguing that the Walmart Website listings show that TCP-branded products are not sold exclusively by Defendant and that other retailers sell virtually the same or similar goods. (RJN2 at 5.) Defendant also argues that because its products are "relatively inexpensive children's clothes . . . comparable in quality and price to children's clothing from other retailers in the market," Plaintiffs have a burden to investigate and plead facts regarding similar goods from other retailers, not limited to TCP-branded products.

These arguments do not support dismissal. First, "in cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant." Rubenstein v. Neiman Marcus Grp. LLC, 687 F. App'x 564, 568 (9th Cir. 2017) (quoting Concha v. London, 62 F.3d 1493, 1503 (9th Cir. 1995)). Defendant is best positioned with knowledge and information regarding the existence of similar products from other retailers in the children's clothing market, whether its products are available at third-party retailers, and at what price. Second, Plaintiffs' principal theory of liability is that Defendant does not (often or ever) sell its products at the advertised regular prices, not that the advertised regular prices are out of step with the products' market value. (Opposition at 5.) This Court has previously found that "[t]he placement of a price in strike-through font next to a lower price is reasonably believed to be a former price comparison" as opposed to "the use of text such as 'Comparable Value' or 'Retail Value, My Price.'" Real v. Y.M.I. Jeanswear, Inc., 2017 WL 11675686, at *4 (C.D. Cal. Sept. 1, 2017). Plaintiffs allege that Defendant advertises online sales through strike-through font and advertises in-store sales through large sale-discount signage on top of or alongside clothing

---

[4] Because the Court does not rely on these exhibits, RJN1 and RJN2 are **DENIED AS MOOT**.

racks.  (FAC ¶¶ 18- 20.)  These allegations are sufficient to establish that Plaintiffs reasonably understood the strike-through price to be Defendant's former price for that particular item at that particular store, not the prevailing market price of similar goods from other retailers.

//
//

Finally, this Court has previously rejected the argument that Cal. Bus. & Prof. Code § 17501 requires plaintiffs to allege facts about a product's value in the relevant market:

> To plausibly establish that the alleged "former price" is not the prevailing market price, it is sufficient for Plaintiffs to allege that Defendant 'consistently sells its products at prices significantly . . . lower' than its purported, non-existent, former prices.  Plaintiffs '[do] not need to identify prices charged by other retailers to plausibly establish that [Defendant's] advertised former prices are higher than prevailing market prices.'

Moody v. Hot Topic, Inc., 2023 WL 9511159, at *8 (C.D. Cal. Nov. 15, 2023) (quoting Knapp v. Art.com, Inc., 2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016)).  Plaintiffs have adequately alleged that Defendant consistently holds perpetual sales.  (See FAC ¶ 19; Ex. A.)

Accordingly, the Court **DENIES** the Motion as to the CLRA, FAL, and UCL claims.

**B.      Restitution**

Defendant next argues that Plaintiffs' claims for equitable restitution should be dismissed because Plaintiffs have an adequate remedy at law.  Defendant relies on Sonner v. Premier Nutrition Corp., in which the Ninth Circuit held that a federal court does not have equitable jurisdiction if a plaintiff has an adequate remedy at law.  971 F.3d 834, 844 (9th Cir. 2020).  The Ninth Circuit has since applied Sonner at summary judgment but has not ruled whether or how it should apply to motions to dismiss.  See Guzman v. Polaris Industries Inc., 49 F.4th 1308, 1313 (9th Cir. 2022).

This Court is persuaded by the numerous Central District cases rejecting Sonner's application at the pleading stage.  See, e.g., Adams v. Cole Haan, LLC, (C.D. Cal. Mar. 1, 2021) ("[B]arring claims for equitable relief at the pleading stage is inconsistent with the federal rules that permit pleading in the alternative."); Dahlin v. Under Armour, Inc., 2020 WL 6647733, at *4 (C.D. Cal. July 31, 2020) ("Indeed, even if [p]laintiff could not obtain restitution she might be able to obtain injunctive relief . . . [a]s a result, the [c]ourt cannot conclude, at this stage, that [p]laintiff has an adequate damages remedy that forecloses all equitable relief."); McFall v. Perrigo Co., 2021 WL 2327936, at *14 (C.D. Cal. Apr. 15, 2021) ("Sonner did not hold a plaintiff must choose one form of relief in the complaint and waive the ability to seek alternative forms of relief. Sonner only reiterated the well-known principle a plaintiff must plead, and eventually show, legal remedies are inadequate for a court to award equitable remedies") (emphasis added); Carroll v. Progressive Casualty Ins. Co., 2023 WL 3526137, at *6 (C.D. Cal. Mar. 6, 2023)

("Unlike in Sonner, where the plaintiff dropped her damages claim on the eve of trial, this case is at the pleading stage. Thus, Sonner has 'limited applicability.'") (internal citation omitted); Dahlin v. Donna Karen Company Store, LLC, No. 2:21-cv-07711-AB-JPRx, slip op. at 10 (C.D. Cal. Mar. 16, 2022) (rejecting a Sonner challenge in false discounting case, explaining "without an equitable remedy . . . it would be difficult to ensure [d]efendant would cease engaging in its unlawful pricing scheme . . . damages for past harm are not likely to dissuade [d]efendant from engaging in this allegedly unlawful behavior in the future.")

At the pleading stage, all that is required is that "plaintiff can articulate a basis for why there may (depending on how the litigation develops) not be an adequate remedy at law." French v. Banana Republic LLC, 2024 WL 4682312, at *2 (N.D. Cal. Nov. 4, 2024).  Here, the FAC alleges that Plaintiffs are uncertain "whether an award of damages can or will adequately remedy their monetary losses." (FAC ¶ 50.)   Plaintiffs explain in their opposition brief that they intend to use a price premium model to calculate restitution, which may yield a different result than damages. (Opposition at 14.)  "In this case, and at this stage, the plaintiff has plausibly asserted that damages and restitution would not be for the 'same amount of money for the exact same harm.'" French, 2024 WL 4682312 at *3 (quoting Sonner, 971 F.3d at 844).

Defendant also argues that Plaintiffs fail to state a claim for restitution.  Specifically, Defendant argues Plaintiffs fail to "allege that the items they purchased were worthless; in fact, the FAC indicates they received goods at a very reasonable price." (Motion at 19.)  However, the FAC alleges a different basis for restitution—that Defendant's deceptive pricing scheme influenced Plaintiffs pay for merchandise they would not have otherwise purchased.  (FAC ¶¶ 22, 44, 45, 68.)  Restitution is available "even where a plaintiff has not suffered a loss, if a defendant has wrongly gained a benefit."  Nemykina v. Old Navy, LLC, 461 F. Supp. 3d 1054, 1061 (W.D. Wash. 2020).  "To the extent she is able to prove these allegations, she may be entitled to restitution of the amounts unlawfully gotten by these misrepresentations."  Id.  Accordingly, the Court **DENIES** the Motion and holds that Plaintiffs have sufficiently pleaded restitution.

**C.      Motion to Strike**

Defendant argues that the FAC's class allegations are overbroad and should be stricken. (Motion at 20.)  The FAC defines the putative class as:

> All persons, within the State of California, who, within the applicable statutory period and in all events on or after January 29, 2020 (the "Class Period"), purchased from The Children's Place's one or more products at discounts from an advertised reference price and who have not received a refund or credit for their purchase(s).

(FAC ¶ 53.)

Defendant argues that, as defined, the FAC includes "(i) persons who were Rael Action Class Members on notice of TCP's alleged advertising practices and therefore unable to be deceived in the class period in this action, (ii) individuals who either did not see or were not deceived by the advertisements at issue, and (iii) people who purchased discounted products where the discounts were not false." (Motion at 21.)

Regarding Plaintiff's first point, "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." Davidson v. Kimberly-Clark, 889 F.3d 956, 969 (9th Cir. 2018). Furthermore, "[e]ven where plaintiffs' class definitions are suspicious and may in fact be improper, plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery." In re Saturn L–Series Timing Chain Prods. Liab. Litig., 2008 WL 4866604, *24 (D.Neb. Nov. 7, 2008). The Court declines to take the very "rare" step of striking class allegations before discovery has commenced and before the class certification stage. Cholakyan v. Mercedes-Benz USA, LLC, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011). Accordingly, Defendant's Motion to strike the class allegations is **DENIED**.

## V.     CONCLUSION

For the above reasons, the Court **DENIES** the Motion and **VACATES** the November 25, 2024 hearing.

**IT IS SO ORDERED.**